### *EX PARTE* KREPS.

JUDGES—RELATIONSHIP—PROBATE JUDGE.—In this State, the rule for ascertaining the relationship between a Judge and a party litigant is to count up from either to the common ancestor and then down to the other, each step in the ascending and descending scale to count one degree, and the probate judge held not to be so related to any party in this case within the sixth degree.

Before TOWNSEND, J., Saluda, December, 1900. Affirmed.

Petition by L. L. Kreps and N. H. Watson, at instance of Ellen Watson, to have will of M. B. Watson proved in due form of law. From order admitting the will to such proof, respondent, Ellen Watson, appeals to Circuit Court, and from order dismissing such appeal, she appeals to this Court.

*Messrs. C. J. Ramage* and *J. N. O. Gregory,* for appellant, cite: *Constitutional and statutory provisions as to disqualification of Judges by consanguinity are:* Art. I., sec. 29; art V., sec. 6, Rev. Stat., 2296. *Canon law is proper method for computing relationship:* 56 Am. Dec., 288. *Failure to object before trial no waiver:* 84 Am. Dec., 130; 32 Am. Dec., 348; 50 Am. St. R., 825; 3 Bush., 352; 13 Gray, 12; 105 Mass., 219; 7 Am. St. R., 513; 1 Hill (N. Y.), 654; 28 Bart., 503; 17 Bart., 410; 1 N. Y., 83; 19 Conn., 584; 79 Mich., 642; 19 Am. St. R., 198; 3 N. Y., 547; 37 Cal., 192; 23 Tex., 104; 77 Ind., 366; 20 Mich., 25; 22 Mich., 349; 31 Mich., 452; 49 Mich., 505; 56 Conn., 501; 7 Am. St. R., 320; 124 Ill., 516; 48 Ark., 151.

*Messrs. Sheppard Bros., E. W. Able* and *P. B. Waters,* contra. The former cite: *As to the relationship of the Probate Judge to the litigants:* Con. 1895, art. V., sec. 6; Rev. Stat., 2296, 1980, sub. 6; 4 DeS., 405; 2 Hill Ch., 418; 16 Ency., 703; 24 Ency., 365. *Appellant waived right to make objection by not objecting before trial:* 24 Ency., 995; 51 S. C., 171; 43 S. C., 57; 11 S. C., 319.

July 1, 1901. The opinion of the Court was delivered by

MR. JUSTICE GARY. In pursuance of notice and after the introduction of testimony, Walter Satcher, judge of probate for Saluda County, admitted to probate in due form of law the will of M. B. Watson, deceased. Thereafter a motion was made for a new trial before the probate judge aforesaid, "on the ground that there was not sufficient evidence to sustain said order, and on the further ground that Walter Satcher is related to said N. H. Watson and the wife of said L. L. Kreps within the sixth degree."

The following statement appears in the record: "Several affidavits were then introduced, the purport of which was that Walter Satcher was the father of the judge of probate, Walter Satcher; that Willis Satcher was the father of Walter Satcher, sr.; that Arthur Satcher was the father of Willis Satcher; that Sam Satcher was the father of Arthur

Satcher, and was the common ancestor; that Sam Satcher was the father of Amos Satcher, who was also a brother of Arthur Satcher above named; that Amos Satcher was the father of Lois Satcher, who intermarried with Watson; that Lois Watson was the mother of N. H. Watson, and wife of L. L. Kreps, parties to this action." The attorneys of Mrs. Ellen Watson filed a joint affidavit, stating that when the will was admitted to probate, they did not know of any relationship between the parties hereinbefore mentioned. The motion was refused, whereupon Mrs. Ellen Watson appealed to the Circuit Court.

His Honor, Judge Townsend, granted the following order: "After hearing argument pro and con upon the exceptions to the decree of the probate judge of Saluda County, dated the        day of        1900, and it appearing that the probate judge is not related to the petitioners within the sixth degree, and it further appearing that the respondent, Ellen Watson, did not raise the question of relationship at the original hearing of the case to prove will in solemn form, and it appearing still further that there is no showing upon the part of Ellen Watson that she did not know of the existence of the relationship between the petitioners and probate judge, upon motion of John C. Sheppard and Eugene W. Able, it is ordered, that the motion for a new trial be and the same is hereby dismissed." The appeal herein is from said order.

The first question that will be considered is whether the probate judge was related to the parties aforesaid within the sixth degree. It is true, Mr. Blackstone, in the second volume of his Commentaries, 207, does say: "The method of computing these degrees, in the canon law, which our law has adopted, is as follows: We begin at the common ancestor and reckon downwards; and in whatsoever degree the two persons, or the most remote of them, is distant from the common ancestor, that is the degree in which they are related to each other. Thus *Titius* and his brother are related in the first degree; for from the father to each of them

is counted only one. *Titius* and his nephew are related in the second degree; for the nephew is two degrees removed from the common ancestor, viz: his own grand-father, the father of *Titius*." This was said with reference to the inheritance of *lands* by the next of kin.

In the same volume, 504, he, however, uses this language: "If the deceased died wholly intestate, without making either will or executors, then general letters of administration must be granted by the ordinary to such administrator, as the statutes of Edward III. and Henry VIII., before mentioned, direct. In consequence of which, we may observe * * * 3. That the *nearness* or propinquity of degree shall be reckoned according to the computation of the civilians, and not of the canonists, which the law of England adopts in the descent of real estates; because in the civil computation the intestate himself is the *terminus a quo* the several degrees are numbered, and not the common ancestor, according to the rule of the canonists."

In discussing the methods of acquiring *personal* property, in the same volume, 515, he says: "The next of kindred, here referred to, are to be investigated by the same rules of consanguinity, as those who are entitled to letters of administration." It will thus be seen that, at common law, the rule was different for determining the degree of consanguinity as to the next of kin, in the inheritance of real and personal estates.

In order, no doubt, to have an uniform rule, subdiv. 6, of sec. 1980, Rev. Stat., was enacted, which provides that, "in reckoning the degrees of kindred, the computation shall begin with the intestate and be continued up to the common ancestor, and then down to the person claiming kindred, inclusively, each step inclusively being reckoned as a degree." Sec. 2296 of the Rev. Stat. is as follows: "No Judge or other judicial officer shall preside on the trial of any cause, where he may be connected with either of the parties, by consanguinity or affinity, within the sixth degree." This section is not affected by sec. 6, art. V., of

the Constitution, which provides that "no Judge shall preside at the trial of any cause in the event of which he may be interested, or when either of the parties shall be connected with him, by affinity or consanguinity, within such degree as may be prescribed by law," for under the provisions of sec. 10, art. XVII., of the Constitution, "all laws now in force in this State, and not repugnant to this Constitution, shall remain and be enforced until altered or repealed by the General Assembly."

Neither the rule of the common law, as to consanguinity of kindred in the descent of real estate by inheritance, nor that as to personal effects, has, in strictness, any application to this case. But, in no event, do we see how the rule of the common law as to real estate could be invoked, as it is superseded by subdiv. 6, sec. 1980, of the Rev. Stat., which applies alike to real and personal estates. In vol. 16, Am. & Eng. Enc. of Law, 703 (1st ed.), it is said: "In England and in the United States, statutes of distributions modeled upon the 118th novel of Justinian have been enacted, which defines with precision the order of preferences among kindred. In construing these statutes, the Courts have generally applied the rule of the civil law in ascertaining the proximity of the kindred. In determining lineal consanguinity, each step up or down from the decedent counts as one degree. Thus an intestate or his son or father are related in the first degree, and intestate and his grand-son or grand-father are related in the second degree. In determining collateral consanguinity, the rule is to count up from the intestate to the common ancestor, and then down to the person whose kindred with the intestate is sought to be ascertained. In this computation each step, both in the ascending and the descending line, counts as one degree. Thus, an intestate and his brother are related in the second degree, and an intestate and his cousin in the fourth degree." This is the rule in South Carolina. Under this interpretation of the law, the other exceptions present merely abstract questions and will not be considered.

3—61

It is the judgment of this Court, that the order of the Circuit Court be affirmed.